[No. 8488.   Department Two.   March 26, 1910.]

THE STATE OF WASHINGTON, *on the Relation of John McKee et al., Respondents,* v. A. G. McNEILL, *as Sheriff of Benton County, Appellant.*[1]

EXEMPTIONS—PERSONS ENTITLED—FARMERS. Under a liberal construction of Rem. & Bal. Code, § 563, allowing exemptions to a farmer of a team, harness and wagon, "also farming utensils actually used about the farm," a team, harness and wagon need not be actually used about the farm or the farmer living thereon; it is sufficient if farming has been his principal occupation for years, that he had recently moved to town, sold or traded his homestead, and made arrangements to rent a ranch, intending to go upon and farm it.

EXEMPTIONS—PERSONS ENTITLED—ABSCONDING DEBTOR—QUESTION OF FACT. Whether a debtor has forfeited his right to exemptions by reason of the fact that he was about to leave the state with intent to defraud his creditors presents only a question of fact.

EXEMPTIONS—VALUE—APPRAISEMENT—WAIVER—EFFECT. Under Rem. & Bal. Code, § 572, providing for an appraisement of property levied upon when it is claimed as exempt, a creditor who waives the appraisement and directs the sheriff to hold the property is precluded from raising any question as to the value of the property as stated in the debtor's claim of exemption.

[1]Reported in 107 Pac. 1028.

Appeal from a judgment of the superior court for Benton county, Holcomb, J., entered July 22, 1909, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action for a writ of mandate to release exempt property held under a writ of attachment. Affirmed.

*H. Dustin,* for appellant.

*Linn & Boyle,* for respondents.

PARKER, J.—On June 4, 1909, under a writ of attachment issued out of the superior court against the relators, the defendant as sheriff seized and took into his possession the following property belonging to them: One brown gelding; one bay gelding; two gray mares; two colts; two sets of double harness; one hack; one wagon; and one wheat ranch. On June 5, 1909, the relators made and delivered to the sheriff a list of personal property belonging to them, verified as being a complete list of all their property. The items of property contained in this list included the property so seized and then in possession of the sheriff, and also certain household goods, and none other. The household goods were clearly within the exemptions of subd. 3, section 563 of Rem. & Bal. Code. At the same time the relators executed and delivered to the sheriff their claim for exemption in writing, demanding that the sheriff set over to them from the property so seized and in his possession, the two mares, one set of harness, and the wagon; claiming the same as exempt to them as farmers; and also demanding that the sheriff set over to them the balance of the property so seized and in his possession, which property they selected in lieu of property not possessed by them which would be exempt under subd. 4, section 563, claiming the same did not exceed $250 in value. The plaintiff in the attachment suit expressly waived his right to have the property appraised, refused to take any action in relation thereto, and directed the sheriff

to continue to hold the same, which the sheriff did, and thereupon this action was instituted seeking to compel the sheriff to deliver the property to the relators. A trial before the court resulted in judgment in favor of the relators, from which the sheriff has appealed.

It is contended by learned counsel for appellant that the evidence does not warrant the conclusion that respondents were farmers at the time of the attachment, within the meaning of subd. 5, of section 563, and that they are not entitled to the team, harness, and wagon, claimed by them as farmers. There was competent evidence tending to show the following: The respondent John McKee had been engaged in farming as a livelihood for twenty years past, and since 1903 had been living on a homestead in Benton county, until the fall of 1908. While living on his homestead, he had no stock or farming implements, and was unable to buy any. He worked some upon his own land and also worked for his neighbors. He caused some fifteen acres or more of his land to be brought under a state of cultivation, and rented his land taking a share of the crop in payment, but continued to live upon it until the fall of 1908, when he moved with his family into the town of Prosser to enable his children to go to school. In the spring of 1909 he traded his homestead for the property here involved and $368 in money. This money was mostly consumed in the payment of debts, and the balance was consumed in purchasing supplies for his family and stock. About this time he made arrangements for leasing a ranch in Franklin county, intending to go there and farm upon it. He was still living in Prosser when the property was seized by the sheriff. While there are circumstances shown tending to contradict some of these facts, we think the evidence was sufficient to warrant the trial court in believing them, as it must have done in rendering the judgment it did.

Counsel argues that since respondents were not the owners of or living upon, a farm, or actually engaged in farming

at the time of the attachment, they cannot successfully claim exemptions as farmers, claiming they were not then farmers within the meaning of subd. 5, of section 563, which reads:

"To a farmer, one span of horses or mules, with harness, or two yoke of oxen, with yokes and chains, and one wagon; also farming utensils actually used about the farm, not exceeding in value five hundred dollars in coin."

Our attention is particularly directed to the words, "actually used about the farm." We do not think that the spirit of our exemption laws contemplate such a strict construction as counsel seeks to apply to this provision. If a man has for years made farming his principal occupation, and intends to do so in the near future, we think the mere fact that he may not be so engaged, and his team, wagon, and harness are not being used in farming at the time of the levy thereon, he is not thereby deprived of his exemption right under this provision. *Pease v. Price*, 101 Iowa 57, 69 N. W. 1120; *Cleveland v. Andrews*, 5 Idaho 65, 46 Pac. 1025, 95 Am. St. 165; *Spence v. Smith*, 121 Cal. 536, 53 Pac. 653, 66 Am. St. 62; *Hickman v. Cruise*, 72 Iowa 528, 34 N. W. 316, 2 Am. St. 256. Following the general rule, this court has liberally construed our exemptions in favor of the poor debtor. *Mikkleson v. Parker*, 3 Wash. Ter. 527, 19 Pac. 31; *Dennis v. Kass & Co.*, 11 Wash. 353, 39 Pac. 656, 48 Am. St. 880; *Puget Sound Dressed Beef & Packing Co. v. Jeffs*, 11 Wash. 466, 39 Pac. 962, 48 Am. St. 885, 27 L. R. A. 808; *Geiger v. Kobilka*, 26 Wash. 171, 66 Pac. 423, 90 Am. St. 733; 18 Cyc. 1380.

It is further contended that respondents are about to leave the state with intent to defraud their creditors, and are thus deprived of the right of exemptions under Rem. & Bal. Code, § 571. This presents only a question of fact, which we think the evidence justified the learned trial court in resolving against appellant. Some contention is made upon the question of the value of the property claimed as exempt. Section 572 of Rem. & Bal. Code, provides for an appraise-

ment upon the claim of exemption being made upon demand of the creditor. Such appraisement having been waived, as we have noticed, we think the trial court was not called upon to consider the question of value.

We conclude that the judgment should be affirmed. It is so ordered.

RUDKIN, C. J., CROW, DUNBAR, and MOUNT, JJ., concur.