[No. 26786. *En Banc.* February 1, 1938.]

NORTHERN SAVINGS & LOAN ASSOCIATION, *Appellant,* v. LYDIA V. KNEISLEY, *Respondent,* THE PACIFIC NATIONAL BANK OF SEATTLE *et al., Garnishee Defendants.*[1]

[1]Reported in 76 P. (2d) 297.

*Patterson & Patterson,* for appellant.
*Wright, Jones & Bronson,* for respondent.

BEALS, J. — During the month of February, 1929, Harry R. and Lydia V. Kneisley, husband and wife, executed a note in favor of Northern Savings & Loan Association, a corporation (hereinafter referred to as the association or appellant), and at the same time executed a mortgage on a tract of real estate to secure payment of the note. Mr. Kneisley died November 7, 1930, and thereafter the association instituted suit on its note, also praying for foreclosure of its mortgage. Judgment was rendered in the association's favor, and after the application of certain credits, there remained a deficiency judgment against Mrs. Kneisley in the sum of $2,500.

Mr. Kneisley left a small community estate, all of which, on Mrs. Kneisley's petition, was set aside to her

as exempt, in lieu of homestead, pursuant to Rem. Rev. Stat., § 1473 [P. C. § 9893]. Mr. Kneisley carried a large amount of life and accident insurance, all payable to Mrs. Kneisley, and after Mr. Kneisley's death, his widow received $120,000 as the proceeds of these policies. By an arrangement between Mrs. Kneisley and one of the insurance companies, she received from that company annuity certificates guaranteeing payment to her, for the remainder of her life, of the sum of $239 per month. She also entered into an agreement with The Pacific National Bank of Seattle, whereby she turned over to that institution $42,500 of the insurance money in trust, to invest the money and pay the net income to her. For the purposes of this opinion, we assume, without deciding, that the property held by the trustee is, in so far as Mrs. Kneisley's creditors are concerned, her property, as though merely on deposit with the bank.

The association, in an endeavor to collect the amount remaining due upon its judgment against Mrs. Kneisley, sued out two writs of garnishment; one directed to The Pacific National Bank of Seattle, the other to the New York Life Insurance Company. The latter company answered the writ, disclosing that Mrs. Kneisley had purchased the annuity above referred to; that one monthly payment was due the annuitant; and that another payment would fall due each month thereafter. By its answer, the bank disclosed that Mrs. Kneisley had on deposit therein in a checking account the sum of $650; that it held, belonging to her, certain shares of stock; and that it had in its possession under the trust agreement securities worth over $40,000, besides nearly $1,000 in money.

Upon filing of the answers to the writs of garnishment, the association moved for judgment thereon in its favor, whereupon Lydia V. Kneisley filed in the ac-

tion a verified claim of exemption, alleging that all the properties disclosed by the two garnishees as in their possession were the proceeds and avails of policies of insurance upon the life of her late husband and, as such, exempt from liability on account of the judgment owned by the association. The association by affidavit controverted Mrs. Kneisley's claim, and upon the issues as then made up, the matter came on for trial before the superior court. After a hearing, the court entered an order adjudging that the annuity above referred to and all the securities, credits, and cash shown to be in the possession of the garnishees were, under the statutes of this state, exempt from execution on the association's judgment. From the formal order of the superior court declaring the properties exempt, the association has appealed.

Respondent, Lydia V. Kneisley, has moved to dismiss the appeal on the ground that no proper or sufficient bond on appeal was filed by appellant. The superior court, in the order appealed from, fixed the amount of the supersedeas bond to be filed by the association, in the event it should appeal from the order, in the sum of one thousand dollars, and appellant filed a bond in that amount, conditioned both as a cost and supersedeas bond. This bond, being in the amount fixed by the trial court for a supersedeas bond, was clearly insufficient to serve both as a supersedeas and cost bond. Later, appellant filed an additional cost bond in the sum of two hundred dollars.

Rem. Rev. Stat., § 1730-9 [P. C. § 7297], reads as follows:

" . . . no appeal shall be dismissed . . . because an appeal bond which is given both as a cost bond and as a bond on supersedeas shall be insufficient by reason of the amount, but the appellant shall in all cases be allowed to give a new bond within such time and upon such terms as the court may order."

Under this statute, the filing of a new and additional bond was proper, and is allowed. The appeal is regularly before this court, and the motion to dismiss the same is denied.

Appellant assigns error upon the entry of the order declaring the property in the hands of the garnishees exempt from levy and execution. Appellant contends, first, that the statutory exemption of the proceeds or avails of life insurance does not extend to property purchased with such proceeds, or with the income, earnings, or profits derived therefrom; second, that respondent, as widow, having asked for and received the entire estate of her deceased husband, accepted this award in lieu of all other exemptions; third, that the written claim of exemption filed by respondent before the court below is defective in form and insufficient to support the order appealed from; fourth, that Rem. Rev. Stat., § 7230-1 [P. C. § 7854-2] *(infra)*, is unconstitutional as class legislation and because the same is not in accord with the provisions of the state constitution relating to exemptions; and fifth, that the proceeds of policies of life and accident insurance, to the extent of premiums paid thereon after the debt due the claimant was incurred, are not exempt from the creditor's claim.

We shall discuss these propositions in order.

The first statute of this state exempting the proceeds of policies of life insurance is found in chapter 125, Laws of 1895, p. 336, and reads as follows:

"Section 1. That the proceeds or avails of all life insurance shall be exempt from all liability for any debt.

"Sec. 2. There being no adequate law now in force exempting the proceeds of life insurance, an emergency is hereby declared to exist, and this act shall take effect immediately."

By chapter 49, Laws of 1897, p. 70, § 1 of the act of 1895, p. 336, was amended to read:

"Section 1. That section 1 of an act entitled 'An act exempting the proceeds of life insurance from liability for debt, and declaring an emergency,' approved March 20, 1895, is amended to read as follows: Section 1. That the proceeds or avails of all life and accident insurance shall be exempt from all liability for any debt."

This enactment (save as affected by § 36, chapter 142, Laws of 1909, p. 556) stood for thirty years, and was amended by chapter 92, Laws of 1927, p. 72, which is now in force, the pertinent portions of which act read as follows:

"Section 1. That the proceeds or avails of all accident and health insurance heretofore or hereafter effected shall be exempt from all liability for any debt of the assured, and any debt of the beneficiary existing at the time the policy is made available for his use.

"Sec. 2. That the proceeds or avails of life insurance heretofore or hereafter effected by any person on his own life . . . shall be exempt from all liability for any debt of the person effecting the insurance, or for any debt of the beneficiary existing at the time the policy is made available for his use, unless the contrary appears by the terms of the policy: . . . *Provided,* That subject to the statute of limitations, the amount of any premium for said insurance paid in fraud of creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy, . . ."

Section 1 of this act appears as Rem. Rev. Stat., § 569 [P. C. § 7854-1], and § 2 as Rem. Rev. Stat., § 7230-1 [P. C. § 7854-2].

The words "proceeds or avails" are contained in all of the statutes above quoted. The legislature deemed the first statute above set forth so important that it declared an emergency, so that the act should take effect immediately. The same is true of the amendatory statute enacted in 1897. It should also be noted that, by each amendment, the statutory exemption has been extended. It must also be remembered that this

court has repeatedly held that exemption statutes are to be liberally construed to effect their intent and purpose. *State ex rel. McKee v. McNeill,* 58 Wash. 47, 107 Pac. 1028, 137 Am. St. 1038; *Northwestern Mutual Life Ins. Co. v. Chehalis County Bank,* 65 Wash. 374, 118 Pac. 326; *Lemagie v. Acme Stamp Works,* 98 Wash. 34, 167 Pac. 60; *Arbogast v. Linz,* 180 Wash. 315, 39 P. (2d) 615.

Appellant contends that, taken literally, the words proceeds or avails mean only the money paid on an insurance policy, and argues that, if the legislature had intended to exempt property purchased with such money, the legislature would have expressly so provided, as it did in the statute exempting a homestead from forced sale. Rem. Rev. Stat., § 532 [P. C. § 7863]. Appellant calls our attention to other exemption statutes in which the property exempt is described with considerable detail. While this argument is entitled to consideration in construing the exemption statute now under consideration, it is not of controlling force.

Appellant also calls our attention to the fact that other statutes exempting property fix a value beyond which the exemption shall not be allowed. It is easy to imagine that the legislature might have fixed an amount beyond which the proceeds of life insurance policies should not be exempt, but this it has never done, and the courts must take the statute as enacted. Considered from the standpoint of creditor and debtor, life insurance taken out by the latter may well have been considered by the legislature as having certain fundamental differences from other classes of property, and the exemptions pertaining to life insurance may reasonably have been allowed to a greater extent than other exemptions.

Undoubtedly, the legislature had the right to declare the proceeds of life and accident insurance exempt. If

this exemption extends no further than to the actual money paid, the beneficiary could put the money in a safe, or possibly deposit the same in a bank, though that course establishes the relation of debtor and creditor, but could not purchase therewith any property, save such as might be exempt by law under other statutes, without subjecting the property to levy and sale. If the money were kept indefinitely in a safe, the creditor could not subject it to his debt, but the owner would be handicapped in the ordinary affairs of life by being unable to safely buy a home or other needed property, by risk of loss, and by the impossibility of investing the money so that it would earn interest or profit. The beneficiary would be placed under a serious disadvantage, without apparent benefit to the creditor.

There is a singular dearth of authority upon the question here presented. In the case of *Ritzville Hardware Co. v. Bennington,* 50 Wash. 111, 96 Pac. 826, 126 Am. St. 894, it was held that money, being the proceeds of a sale of a homestead granted by the United States government, was not exempt, but the question presented in the case cited involved a Federal statute which went no further than to provide that lands acquired under the homestead laws should not be liable to the satisfaction of any debt contracted prior to the issuance of patent. The decision has no bearing upon the question now before us.

The supreme court of Minnesota, in the case of *Ross v. Simser,* 193 Minn. 407, 258 N. W. 582, held that the statutory exemption of the proceeds of life insurance did not extend to property purchased therewith, but the statute of Minnesota providing for such an exemption provided merely that "all moneys received by, or payable to, a surviving wife or child from insurance upon the life of a deceased husband or father, not exceeding ten thousand dollars," should be exempt.

Mason's Minnesota Statutes of 1927, § 9447 (14). The exemption was not allowed, the court, in the course of its opinion, saying:

"That claim we cannot allow simply because we must take the statute as we find it and are not at liberty to add to it by a process which if indulged in would be an amendment and, in effect, judicial legislation."

The language of the Minnesota statute is very different from that of this state.

Appellant cites the opinion of the supreme court of Michigan, in the case of *Martin v. Wayne Circuit Judge*, 228 Mich. 396, 200 N. W. 160, in which the court held that a provision of the Michigan workmen's compensation act, to the effect that "no payment under this act shall be assignable or subject to attachment or garnishment, or be held liable in any way for any debts," did not exempt property purchased with money so received. The exemption applies only to a payment under the act. The case is not in point here.

Cases are also cited in which it has been held that property purchased with money received from the Federal government by way of pension is not exempt. It has been held that the Federal statute exempts merely the money paid, the exemption apparently ending when the money is received by the pensioner. Opinions construing Federal laws concerning government homesteads or money paid by the United States by way of pensions or adjusted compensation to veterans are of slight assistance in determining the questions now before us. The Federal laws controlling such matters differ greatly, both as between themselves and with regard to the state statute now before us for consideration. The decisions, both Federal and state, are in conflict, and a discussion thereof would greatly extend this opinion, to small profit.

Appellant cites other cases from jurisdictions having

statutes different and, in our opinion, more limited in their scope than that of this state. The only statute resembling ours, to which our attention has been called, and which contains the term "avails," is that of the state of Iowa. The supreme court of that state has held that, under a statute providing:

"The avails of all policies of insurance on the life of any individual, payable to his surviving widow, shall be exempt from liabilities for all debts of such beneficiary contracted prior to the death of the assured,"

the exemption extends to property purchased with the proceeds of insurance. *Cook v. Allee,* 119 Iowa 226, 93 N. W. 93; *Booth v. Martin,* 158 Iowa 434, 139 N. W. 888. In the earlier Iowa case, in the course of its opinion, the supreme court said:

"Construing, then, these various enactments, as now embodied in section 1805 of the Code, it is clear that the purpose has been to provide that the money derived from life or accident insurance shall inure to the benefit of the widow, exempt from her antecedent debts. If this conclusion be correct, it follows that she may invest a part or the whole thereof in property which shall be necessary for the comfort and support of herself and family, without impairing this right of exemption; for to deny her this right might, and often times would, destroy the benefits the statute was intended to confer. The legislature never intended to limit the exemption to the money itself, because to so limit it would be to destroy the value of the money as a purchasing medium, and it has no other, ordinarily.

"Carried to its final conclusion, such a holding would subject every purchase of more than the bare necessities of life to the levy of an execution."

Appellant calls our attention to certain criticisms of the Iowa decisions contained in the opinions of other courts. The supreme court of Minnesota, in the case of *Ross v. Simser, supra,* after calling attention to the wording of the Iowa statute, remarked: "Putting aside

the effect of statutory differences, the rule is pretty well settled the other way." In the case at bar, the effect of "statutory differences" is to render the decisions relied on by appellant of less weight, as the law of Iowa closely resembles that of this state, while the statutes of other states are narrower in their provisions. Our statute is apparently more comprehensive than any other, including both "proceeds and avails."

In 96 A. L. R. 410, is found an annotation under the title, "Exemption of property purchased with exempt proceeds of insurance." Several cases are assembled and discussed, but it is noted:

"There is but little authority upon this question, and in the few cases specifically discussing the point, there is a conflict of authority."

In 2 Couch Cyc. of Insurance Law, 936, § 330 *et seq.*, the matter is also discussed, attention being called to the fact that the determination of the question with which we are here concerned and other kindred matters

" . . . has depended for the greater part upon the terms of the particular statute involved, so that varying conclusions have been reached."

It is also observed that:

"These statutes, it has been said, are not declarative of any common-law principle, but are enabling acts creating a new right and conferring a special privilege, and although, to secure the exemption intended, the statute must be conformed to, still, a liberal construction will be given to secure the relief intended, where a proper case arises for which the statute makes provision."

The case of *Holden v. Stratton*, 198 U. S. 202, 49 L. Ed. 1018, 25 S. Ct. 656, is of importance in connection with the question here to be determined. Proceedings in bankruptcy having been instituted in the United

States district court for the district of Washington, northern division, against Daniel N. and Lizzie Holden, the parties were adjudged bankrupt and a trustee appointed. Two policies of insurance upon Mr. Holden's life were in effect; one a fully paid non-participating policy for two thousand dollars, the other a five thousand dollar twenty-payment endowment policy. The bankrupts asked that the policies be set aside to them as exempt under the laws of this state, their application being resisted by the trustee, on the ground that the policies had a cash surrender value. The district court held the policies exempt, but on petition for revision, the circuit court of appeals held that the bankrupts were obliged to pay to the trustee the cash surrender value. A writ of certiorari to the supreme court of the United States was then allowed, and the judgment of the circuit court of appeals was reversed and that of the district court affirmed. It was contended by the trustee that the statute of this state contains no exemption of the present value of life insurance policies, several reasons being assigned in support of this contention. In this connection, the court said:

"To support the propositions the law of many States, limiting the exemption of the proceeds of life insurance policies to the cases specified, are referred to, and the argument is that, because in such States there are such statutes, a similar limitation should be read by construction into the Washington statute. But the error in the argument is manifest. It is not to be doubted that the broad terms of the statute, as ordinarily understood, embraced both of the policies, and it would not be construction but legislation to restrict the meaning of the statute in accord with narrower legislation in other States, because in the judgment of a court it might be deemed equitable to do so. The wide departure from the legislation of many of the other States, shown by the unrestricted terms of the Washington statute, instead of manifesting the intention of the legislature of that State to narrow the exemption to conform to the

statutes of other States, on the contrary conclusively shows the intention of the Washington legislature to adopt a broader and more comprehensive exemption. And light upon the intention to give a broad and popular meaning to the term life insurance is shown by the amendment exempting the avails of accident policies, which ordinarily, in the event death does not result, is payable to the insured."

Several opinions of this court should be studied in connection with the facts of this case. In the early case of *Puget Sound etc. Co. v. Jeffs,* 11 Wash. 466, 39 Pac. 962, 48 Am. St. 885, 27 L. R. A. 808, it was held that statutes providing for exemption should be liberally construed, that such statutes are remedial in their nature and should receive such a construction as to give effect to the intention of the legislature. It was held that money paid upon a fire insurance policy covering the loss of household furniture was exempt from execution for a reasonable time after the destruction of the property, when the furniture burned was exempt from execution, even though the money would not otherwise have been exempt.

*In re Heilbron's Estate,* 14 Wash. 536, 45 Pac. 153, 35 L. R. A. 602, it was held that chapter 125, Laws of 1895, p. 336, *supra,* operated *in futuro,* but was not retroactive, as such a construction of the law would be obnoxious to the constitutional provision forbidding the enactment of any law impairing the obligation of a contract. In the course of the opinion, this court said:

"Statutes of this character are founded on charity, they are remedial and partake of the nature of, but are not strictly, exemption laws. *Cole v. Marple,* 98 Ill. 58 (38 Am. Rep. 83); *Fearn v. Ward,* 65 Ala. 33. And we may add that such laws should be liberally construed for the purpose of effecting the object intended."

In the case of *Traders' Nat. Bank v. Schorr,* 20 Wash. 1, 54 Pac. 543, 72 Am. St. 17, an action to set aside a

transfer of real property as in fraud of a judgment creditor, this court used the following language:

"A sale of a homestead under execution is void, and the homestead may be conveyed unaffected by such execution sale. *Asher v. Sekofsky,* 10 Wash. 381 (38 Pac. 1133). The proceeds of exempt property are also exempt from execution. *Puget Sound, etc., Packing Co. v. Jeffs,* 11 Wash. 470 (39 Pac. 962, 48 Am. St. Rep. 885)."

In the case of *Flood v. Libby,* 38 Wash. 366, 80 Pac. 533, 107 Am. St. 851, it was sought to subject life insurance policies to the lien of a judgment. Referring to chapter 125, Laws of 1895, p. 336, this court said:

"It would be difficult to employ language more sweeping and comprehensive than that used in the statute. It reads as follows: 'The proceeds or avails of all life and accident insurance shall be exempt from all liability for any debt.' It will be observed that *all* life and accident insurance shall be exempt from *all* liability for *any* debt. It is within the power of the legislature to declare what property shall be exempt, and we think the language of the statute is too plain to call for controversy."

It was held that the policies of life insurance there in question were exempt from the operation of the judgment against the insured.

In the case of *Reiff v. Armour & Co.,* 79 Wash. 48, 139 Pac. 633, L. R. A. 1915A, 1201, this court held that property acquired out of the proceeds and avails of a life insurance policy was not exempt from the after incurred debts of the beneficiaries. In the course of the opinion, the court said:

"We think the intent of the law is to exempt the proceeds and avails of an insurance policy from the debts of the assured, and from the debts of the beneficiary existing at the time the policy is made available for his use."

The court discussed the Iowa case of *Cook v. Allee, supra,* saying:

"Respondent relies upon the case of *Cook v. Allee,* 119 Iowa 226, 93 N. W. 93. There the statute was more specific than our own. It provided that the avails of all policies of life or accident insurance payable to the surviving widow shall be exempt from liability of all debts of such beneficiary contracted prior to the death of the assured. The beneficiary took a part of the proceeds of the policy and bought a piece of real property. It was sought to subject this property to the lien of a judgment taken upon a debt of the beneficiary existing at the time of the death of the assured. The only question before the court was whether the exempt character of the property was maintained only while the proceeds and avails were in the coin or currency actually tendered in payment of the policy; it being contended that, when once grasped *in manus,* it lost its character as such. It was very properly held that the statute could be given no such restricted meaning, for to so hold would defeat the very object, as well as violate the letter, of the statute there under consideration."

In the case of *German-American State Bank v. Godman,* 83 Wash. 231, 145 Pac. 221, the statute exempting the proceeds or avails of life and accident insurance was attacked, it being sought to limit the scope thereof. This court quoted from its earlier decision in the case of *Flood v. Libby, supra,* and from the opinion of the supreme court of the United States in the case of *Holden v. Stratton, supra.* Referring to the law, this court said:

"The statute is too plain to require construction. Any other interpretation than to follow the simple and direct mandate of the statute would be legislation."

This is an important question of first impression in this jurisdiction, and for that reason we have discussed the matter at considerable length. None of the previous decisions of this court is directly in point, and

those which we have cited are referred to merely for purposes of illustration and analogy. Some of the portions of our opinions which we have quoted are dicta, merely, but nevertheless are entitled to consideration. The case at bar is an extreme case, and might well suggest to the legislature the propriety of limiting the amount of insurance to be declared exempt from the debts of the beneficiary. That, however, is strictly a legislative problem.

As far as we are advised, the statute of this state is broader than that of any other state. It includes "proceeds or avails." Apparently, the legislature intended to establish a very broad and sweeping exemption. This it had the right to do. The supreme court of the United States, in the case of *Holden v. Stratton, supra,* referred to "the wide departure from the legislation of many of the other States, shown by the unrestricted terms of the Washington statute."

The rule to be laid down in this case must apply to all cases; equally to the respondent herein, enjoying $120,000 which she received from policies of insurance upon the life of her late husband, and to a widow with dependent children, who may receive a comparatively small amount, upon which she may be entirely dependent. The legislative policy of this state has always been to allow liberal exemptions to debtors. This court has repeatedly declared that exemption statutes shall be liberally construed for the purpose of carrying into effect the legislative intent.

We are clearly of the opinion that, bearing in mind these principles and the decisions of this court upon kindred questions, and after giving due consideration to the opinions of the courts of other jurisdictions, it must be held that the proceeds or avails of the life insurance policies are, under the statute now before us, and without limitation as to amount, exempt from the

obligations enumerated in § 2 of the statute (chapter 92, Laws 1927, p. 72), and that property belonging to the beneficiary, purchased solely with such proceeds or avails, or the income derived therefrom, continues to be exempt. Our attention is not called to any specific property belonging to respondent which does not fall within this classification.

Appellant next contends that, as in the probate of her husband's estate respondent, under Rem. Rev. Stat., § 1473, claimed as widow her exemption in lieu of homestead, this claim should be held exclusive and in lieu of all other exemptions, including the exemption of policies of life insurance payable to her. The act exempting the proceeds or avails of life insurance policies does not refer in any way to probate proceedings in connection with the estate of a deceased assured. Such a probate proceeding may or may not be instituted.

In the case of *German-American State Bank v. Godman, supra,* it was contended that, if the proceeds of life insurance policies are exempt, such proceeds should have been set aside to the widow and minor children under the provisions of Rem. & Bal. Code, § 1466, *et seq.* Disposing of this contention, we said:

"These sections have no application to the proceeds or avails of insurance policies which have been bequeathed to a designated legatee."

In the case of *Greer v. Robinson,* 149 Wash. 659, 272 Pac. 28, we said, referring to the statute providing for a probate allowance in lieu of homestead:

"Statutes of this nature, while having the effect of freeing awards of property or money made thereunder from the burden of provable debts of the estate, are not strictly exemption statutes, but are viewed by the courts more in the nature of distribution or preferred creditor statutes."

It cannot be held that respondent, having asserted her statutory right in the probate proceeding, is anywise barred from asserting her claim under the statute exempting the proceeds or avails of policies of life insurance.

It is also contended that the claim of exemption filed by respondent in the court below is fatally defective under the rule laid down by this court in the case of *United States Fidelity & Guaranty Co. v. Hollenshead*, 51 Wash. 326, 98 Pac. 749. In the case cited, the debtor appealed from an order directing payment of money in satisfaction of a judgment, which money the debtor claimed to be exempt. The debtor's property was sought to be reached by writ of garnishment, the debtor having filed a claim for exemptions. The order appropriating the money in the hands of the garnishee to the payment of the debt was by this court affirmed. In the course of the opinion, this court said:

"To the end that this privilege may be preserved, the legislature has provided a method whereby the rights of the debtor may be fully protected and at the same time insures to the creditor a complete uncovering of the debtor's property, that he may know whereof he may take to satisfy his demand. Bal. Code, § 5255 (P. C. § 848). While in garnishment proceedings this method could not be held to be exclusive, yet if the debtor adopts it, nothing short of substantial compliance will avail."

It appeared that the debtor sought to establish his claim of exemption under the general exemption law after the issuance of execution. Appellant here argues that respondent in her claim failed to make full disclosure as to all property which she owned or possessed. In the case at bar, respondent filed her claim of exemption, alleging that the property referred to in the answers of the garnishees was her property, and was the proceeds and avails of life and accident in-

surance, and exempt from liability for payment of appellant's judgment. Examination of the record convinces us that, in the case at bar, the issues were clearly and promptly made up, and that respondent's pleading was sufficient to protect her rights.

Appellant also contends that § 2, chapter 92, Laws of 1927, p. 72, under which respondent claimed, is unconstitutional as class legislation, and because the same does not comply with the provisions of the constitution of this state relating to exemptions, citing the case of *Skinner v. Holt*, 9 S. D. 427, 69 N. W. 595, 62 Am. St. 878. In the early case of *In re Heilbron's Estate, supra,* this court held a similar statute constitutional, and in the case of *Holden v. Stratton, supra,* the supreme court of the United States, after considering an argument that our statute is unconstitutional, the case of *Skinner v. Holt,* with other authorities, having been cited, held the law of this state constitutional. The statute is not obnoxious to any provisions of our state constitution, and appellant's contention is without merit.

Appellant argues that, even though it be held that property purchased with the proceeds of the insurance policies is exempt, interest on or income derived from the property so purchased is not exempt, and that interest accrued and to accrue upon the securities which respondent purchased and now owns is liable to levy upon appellant's judgment. In the case at bar, it appears beyond question that all of the property owned by respondent was purchased with money received by her from the insurance policies upon her husband's life. No funds derived from any other source were commingled with the proceeds of the policies, nor has respondent's labor or personal effort of any sort, other than approval of the investments, resulted in increasing the property which she owns.

Under these facts, we are of the opinion that it follows that the income derived solely from respondent's exempt property remains also exempt. It is still the proceeds or avails of the insurance money. If the money can be invested at all and still remain exempt, it is difficult to see how the income from such exempt property can be held subject to execution. If such income be not exempt, the right to invest the proceeds of the policies might well be of little benefit. Of course, if insurance money or income derived from investments thereof be commingled with other funds belonging to the beneficiary, or be commingled with personal labor of the beneficiary, a different question would be presented. We are constrained to hold that the income accrued and to accrue from the securities purchased by respondent with her insurance money is exempt from levy under appellant's judgment.

Finally, appellant contends that it should be held that the premiums paid by respondent's late husband, or the community composed of himself and respondent, on the policies of insurance upon his life, were paid in fraud of appellant as a creditor of the insured, and that an amount equal to these premiums should be appropriated to appellant's claim out of the proceeds of the policies. We find no facts in the record properly before this court which support appellant's contention. The two life insurance policies were each in the sum of twenty-five thousand dollars. These policies carried a double indemnity in case of accidental death, and as Mr. Kneisley apparently died as the result of an accident, respondent received double the face value of the policies. The other twenty thousand dollars which she received was paid on policies of accident insurance. We find nothing in the record which would justify a holding that the premiums on

these policies were paid in fraud of appellant as a creditor of the insured.

The record is free from error, and the order appealed from is affirmed.

MAIN, MILLARD, BLAKE, GERAGHTY, and SIMPSON, JJ., concur.

ROBINSON, J. (dissenting in part)—For reasons given in the foregoing opinion, I am willing to follow the majority in giving a liberal interpretation to the statutory language "proceeds or avails," even though in the instant case it permits the respondent to escape the payment of a just debt by allowing her an exemption in the unconscionable amount of more than $120,000. But the majority do not stop at holding that the stocks, bonds, and annuity purchased by the respondent with the $120,000 received from the insurance companies are exempt as proceeds or avails of life and accident insurance, but go on to exempt the interest and dividends which have subsequently been received from such investments. It seems to me that, in taking this last step, the majority depart from the realm of statutory interpretation and enter the field of judicial legislation, in that they, in effect, add to the words "proceeds or avails of life insurance," used by the legislature, these further words "and the proceeds and avails thereof."

Suppose that A insures his life in favor of B for ten thousand dollars. A dies, and the insurance company pays B the ten thousand dollars on January 1, 1935. Subsequently, B invests the ten thousand dollars in General Motors stock. On January 1, 1937, B receives a dividend check for six hundred dollars, that being his proportionate share of the profits made through the operation of the General Motors Company during the calendar year 1936. I can conceive, though not with-

out some difficulty, that the stock interest in General Motors, which B purchased with the insurance money, may, by a process of liberal interpretation, be said to be the "proceeds or avails of life insurance," upon the theory that, after all, it is the property created by the insurance contract, merely changed as to form. But what about the six hundred dollars dividend? Is that proceeds or avails of life insurance? I cannot think that it is. In the case supposed, B received the complete fruits of the insurance contract on January 1, 1935. The insurance contract was on that date completely extinguished and manifestly could produce nothing thereafter. How then could the six hundred dollars, which did not even come into existence until 1936 and which, but for the successful operation of the General Motors Company during that year, would never have come into existence, be said to flow from the life insurance · contract or be the "proceeds or avails" thereof?

One must grant the same latitude to others in the matter of opinion as in matters of taste, and I, of course, cheerfully accord to anyone else the right to his own opinion in the matter, but, as far as I am personally concerned, I could not join in holding that the six hundred dollars dividend in the case supposed is "proceeds and avails of life insurance" without sacrificing a sincere conviction that it was not. It was wholly created and brought into being by the successful operation of the General Motors Company during the calendar year 1936. It accrued to B solely because he had purchased and become the owner of some of the shares of that company. I would feel compelled to regard it as the "proceeds or avails" of B's investment in General Motors stock.

The opinion of the majority exempts as proceeds or avails of life insurance a deposit in the hands of a

garnishee defendant bank belonging to the respondent which is admittedly wholly made up of dividends and interest received on the stocks or bonds of various commercial and financial corporations acquired by the respondent when she took the proceeds of the insurance on the life of her deceased husband and entered into the investment field. I dissent from that portion of the opinion on the ground that the deposit is clearly not the proceeds or avails of life insurance, and is, therefore, not exempted by the statute invoked. It should be sequestered and applied to the payment of appellant's judgment.

HOLCOMB, J., and STEINERT, C. J., concur with ROBINSON, J.

