**ITT FINANCIAL SERVICES, Appellee,**

v.

**Randell Nathernal POWELL, Appellant.**

**No. 71800.**

Court of Appeals of Oklahoma, Division No. 4.

June 19, 1990.

---

Randy J. Long, Field, Trojan, Long and Sedbrook, P.C., Enid, for appellee.

Jay F. McCown, Quick, McCown, Kaestner and Shaw, Oklahoma City, for appellant.

## OPINION

STUBBLEFIELD, Judge.

This is an appeal from the trial court's order denying a motion to quash an execution and levy, and refusing to discharge the property levied upon. Based upon our review of the record and applicable law, we affirm.

Plaintiff, ITT Financial Services, in a foreclosure action against defendant, Randell N. Powell, obtained a deficiency judgment in the amount of $37,408.25 plus interest, costs and an additional $2,500 in attorney fees. On August 10, 1988, a writ of execution was issued to the Garfield County Sheriff, and property owned by Powell was levied upon. The property consisted of inventory, shelving, equipment and cash located in a retail liquor store owned and operated by Powell.

Powell filed a motion to quash the writ of execution and a supporting brief asserting that all the items taken from the liquor store "were exempt [under 31 O.S.Supp. 1989 § 1(A)(21)] as being traceable exclusively from the proceeds of [a] lump sum cash settlement" he had received from Burlington Northern Railroad for personal injuries sustained on or about May 21, 1987.

The parties argued their respective positions to the trial court and stipulated to the following facts:

[T]hat the Defendant, Randell Nathernal Powell, received a settlement in a lump sum from the Burlington Northern Railroad in the amount of $45,100.00, which the Defendant received on November 6, 1987 and immediately deposited it in the Security National Bank of Enid, Oklahoma; that the Defendant used the monies so deposited to remodel, redecorate, furnish and purchase equipment used in a retail liquor store, including liquor inventory, start-up costs, wages and all other expenses; that the proceeds of the sale through the business known as Pow-

ell's Liquor Store was [*sic*] deposited in the same account with the lump sum settlement; that the business known as Powell's Liquor Store was commenced in February of 1988.

The trial court ultimately overruled Powell's motion to quash, finding that the exemption authorized under section 1(A)(21), would have been applicable to the lump sum settlement had it remained on deposit in the bank, but that the exemption was not applicable to inventory and equipment subsequently purchased with the settlement money because the items purchased were not "exempt in and of themselves" under any other provision of section 1. It is from this order that Powell appeals.

We first consider ITT's motion to dismiss the appeal due to the fact that Powell's brief in chief was filed after the time specified by Civil Appellate Procedure Rule 1.28, 12 O.S.Supp.1989, ch. 15, app. 2. The supreme court has liberally allowed the extension of time for briefing where good cause has been demonstrated. We find that such good cause for the briefing delay has been demonstrated herein, and deny the motion to dismiss.

Powell's sole proposition on appeal is that "property acquired with exempt funds is also exempt." Powell contends that, because the trial court found that the lump sum settlement he received and deposited would have been exempt under section 1(A)(21), and the parties stipulated that the retail liquor business was started with money from the settlement, it follows that inventory, equipment and cash located and used in the operation of the store are also exempt.

Section 1(A)(21) provides:

A. Except as otherwise provided in this title and notwithstanding subsection B of this section, the following property shall be reserved to every person residing in the state, exempt from attachment or execution and every other species of forced sale for the payment of debts, except as herein provided:

\* \* \* \* \* \*

21. Such person's interest in a claim for personal bodily injury, death or workers' compensation claim, for a net amount not in excess of Fifty Thousand Dollars ($50,000.00), but not including any claim for exemplary or punitive damages.

Powell asserts that extending application of the above exemption to the property seized from his liquor store is consistent with both the legislative intent to liberally provide for debtors as against attachment and execution, *State ex rel. Freeling v. Brown*, 92 Okla. 137, 218 P. 816 (1923), and the longstanding rule of resolving all doubts as to whether property is exempt in favor of the debtor. *In re Siegmann*, 757 P.2d 820 (Okla.1988); *Phelan v. Lacey*, 51 Okla. 393, 151 P. 1070 (1915).

Powell cites no Oklahoma authority directly supporting his proposition but calls our attention to statutes and opinions from other jurisdictions which he claims are supportive of his proposed construction of section 1. First, Powell cites the bankruptcy law which provides that property "traceable to" a payment in compensation of loss of future earnings may be exempted. 11 U.S.C. § 522(d)(11)(E) (1979).

However, the federal exemption statute, unlike Oklahoma's, specifically addresses "traceable" property. Powell also overlooks the fact that Oklahoma has opted not to adopt the federally specified exemptions and has instead provided its own *exclusive* list of exempt property. 31 O.S.Supp.1989 § 1(B). Therefore, Powell's reliance on the bankruptcy law as supportive of his position is misplaced, because debtors who file bankruptcy in Oklahoma may only claim those exemptions allowed by state law. *In re Pelter*, 64 B.R. 492 (Bankr.W.D.Okla. 1986).

Powell next cites a Washington decision, *Northern Savings & Loan Ass'n v. Kneisley*, 193 Wash. 372, 76 P.2d 297 (1938), where, under a statute exempting "proceeds or avails" of life policies from liability for debts of an insured or beneficiary, the court held that income accrued and to accrue from securities purchased with insurance money continues to be exempt. The pertinent facts in *Kneisley* were that, upon the death of her husband, Mrs. Kneis-

ley received $120,000 as the proceeds of life insurance policies. She received annuity certificates guaranteeing her a lifetime monthly income and also entered into an agreement with a bank whereby she turned over $42,500 in trust, to the bank, to invest and pay the net income to her.

In finding the annuity and investment income exempt from execution, the court reasoned:

> In the case at bar, it appears beyond question that all of the property owned by respondent was purchased with money received by her from the insurance policies upon her husband's life. No funds derived from any other source were commingled with the proceeds of the policies, *nor has respondent's labor or personal effort of any sort, other than approval of the investments, resulted in increasing the property which she owns.* Under these facts, we are of the opinion that it follows that the income derived solely from respondent's exempt property remains also exempt.

*Id.* at 390–91, 76 P.2d at 304–305.

We find it significant that the *Kneisley* court noted that the statutes of other states were "narrower in their provisions" and that Washington's statute was "apparently more comprehensive than any other, including both 'proceeds and avails'." *Id.* at 382, 76 P.2d 301. The court also noted that determination of the question "has depended for the greater part upon the terms of the statute involved." *Id.* Moreover, although the monies in *Kneisley* were altered in form, the annuity and trust investments were still similar to deposits of the exempt funds. Herein Powell's settlement monies were not kept in any type of monetary form but were converted into fundamentally different properties. For these reasons, we do not find *Kneisley* applicable in construction of Oklahoma's exemption statute.

In construing section 1(A)(21), to determine whether nonexempt property purchased with the proceeds of a personal injury settlement should also be exempt, we have examined analogous Oklahoma statutes and decisions dealing with other classes of exempt property and have determined that such a broad exemption was not intended. For example, in *Keith v. Winters*, 194 Okla. 634, 154 P.2d 83 (1944) (syllabus 2), the supreme court held that the statutory exemption as to proceeds of fraternal benefit insurance "does not extend to property of a nonexempt character purchased with the proceeds of an insurance policy." *See* 36 O.S.1941 § 283 (current version at 36 O.S.1981 § 2720). And, the protection afforded workers' compensation benefits by 85 O.S.1981 § 48, extends to benefits actually paid, collected and deposited in a bank, but *only* when not mingled with other funds. *Stephenson v. Hammons*, 308 P.2d 317 (Okla.1957); *In re Allen's Guardianship*, 182 Okla. 512, 78 P.2d 700 (1938).

More recently, in *United Home Foods Dist., Inc. v. Villegas*, 724 P.2d 265 (Okla. Ct.App.1986), it was held that directly deposited Veteran's Administration disability benefits did not lose their exempt status under 31 O.S.1981 § 7, by being deposited into a bank account. However, in that case, the distinctive nature of the disability benefits remained unchanged and the evidence was uncontroverted that the funds were used upon withdrawal to pay the bills for family necessities.

On appeal from an order of the trial court refusing to quash an execution and levy, this court will examine the record and weigh the evidence as in a case of equitable cognizance and will reverse the judgment if it is clearly against the weight of the evidence or contrary to law. *Crosby v. Fred F. Fox Co.*, 204 Okla. 691, 233 P.2d 974 (1951). Because we must take the statute as we find it, our conclusion is that the exemption contained in section 1(A)(21), does not apply to a personal injury settlement fund after its form has changed, and it is used to purchase other property which is not exempt under any other provision of section 1. Accordingly, the trial court's order denying Powell's motion to quash execution and levy is affirmed.

BRIGHTMIRE, C.J., and REIF, J., concur.