**In re the MARRIAGE OF Gayle M. GEDGAUDAS, n/k/a Gayle M. Deane, Appellee,**

**Marius Joseph Gedgaudas, Appellant.**

**No. 98CA0041.**

Colorado Court of Appeals, Div. III.

April 15, 1999.

---

Canges, Iwashko & Bethke, P.C., James S. Bailey, Denver, Colorado, for Appellee.

Wollins, Hellman & Green, Jonathan J. Hellman, Michael J. Axelrad, Denver, Colorado, for Appellant.

Opinion by Judge ROY.

In this post-dissolution garnishment proceeding, Marius Joseph Gedgaudas (husband) appeals from an order denying a claimed exemption after his life insurance carrier was garnished to collect maintenance awarded to Gayle M. Gedgaudas (wife). We affirm in part, reverse in part, and remand with directions.

Wife served husband's life insurance carrier with a writ of garnishment. The insurance company filed an answer listing ten insurance policies owned by husband, eight of which insured the lives of the parties' children and two of which insured husband's life. Husband filed a claim asserting that his interest in the policies was exempt pursuant to § 13–54–102(1)(*l*)(I)(A), C.R.S.1998. The question whether the garnishment of an insurance carrier is an appropriate method to attach cash values in outstanding insurance policies is not at issue.

After conducting an informal hearing, the trial court concluded that the statutory exemption did not apply to the eight policies insuring the children, and no appeal is taken from that conclusion. The trial court further concluded that husband's interest in the two policies insuring his life were garnishable to the extent of $2,731, which represented the increase in the cash surrender value in the preceding 24 months occasioned principally by husband having reduced the balance on loans outstanding against the cash values of the policies. Finally, the trial court also declined to grant any equitable exemption as to all ten insurance policies.

At the outset, we note that this is one of several appeals pending in this court between the parties arising out of this dissolution of marriage proceeding. Considerable difficulty was experienced in transmitting the record on appeal in this case, especially the exhibits accepted by the trial court at the exemption hearing. Following oral argument in this case, a search was made of all of the records lodged with this court. The exhibits in question were discovered in the record of a previous appeal still pending in this court in which the parties were each represented by the same counsel as they are here. Those exhibits have been reviewed, and have proved to be of assistance to us in understanding the facts.

### I.

Relying on C.R.C.P. 103 § 6(c)(4), husband contends that the trial court erred in failing to provide a hearing with respect to the claimed exemption. We disagree.

The rule provides that, upon the filing of an objection or claim of exemption to a writ of garnishment, the court shall set and conduct a hearing within ten days at which all interested parties may testify, and the court shall determine the validity of the objection or claim of exemption.

Here, the record reveals that the trial court did conduct a timely and thorough hearing at which it heard argument and received evidence in the form of exhibits from

the interested parties. Husband's counsel, without objection, participated in that hearing.

Husband contends that only a full hearing with the formal presentation of evidence and testimony would satisfy the rule; and therefore, he argues he was denied a hearing. We are not persuaded.

During the hearing, which was held on the record, the trial court accepted husband's exhibit, which was a document prepared by his life insurance carrier defining "cash value" and "cash surrender value" as those terms were used in the insurance contracts at issue here. The court also accepted, without objection, other documents prepared by husband's insurance carrier showing the cash value of each policy and the amount of any outstanding loans on specific pertinent dates. Husband's counsel did not seek to introduce any additional evidence, nor did he request the opportunity to call witnesses or object to the proceeding. Instead, he chose to rely on the argument and exhibits submitted.

Under these circumstances, we perceive no inadequacy in the hearing.

II.

Husband next contends that the trial court erred in its interpretation of § 13–54–102(1)(*l*)(I)(A), C.R.S.1998. We agree.

The statute provides, in pertinent part, that there shall be a garnishment exemption for:

> [t]he *cash surrender value* of policies or certificates of life insurance to the extent of twenty-five thousand dollars for writs of attachment or writs of execution issued against the insured; except that there is no exemption for increases in *cash value* from moneys contributed to a policy or certificate of life insurance during the twenty-four months prior to the issuance of such writ of attachment or writ of execution. (emphasis added)

■ The purpose of the exemption is to encourage individuals to insure their lives for the benefit of their families. *Hickman v. Hanover*, 33 F.2d 873, 874 (4th Cir.1929); 2A J. Appleman, *Insurance Law and Practice* § 1341 (1966).

In order to realize the cash value or cash surrender value of the life insurance policy, the policy must be surrendered and the coverages terminated. If the policy is surrendered and the coverage is terminated, it may prove difficult, if not impossible, to obtain replacement coverage at a later date as the premiums rise with age, or the insured may become uninsurable due to illness or injury, or the insured may have become engaged in dangerous or rated occupations or activities since the issuance of the surrendered policy. *See* Department of Insurance Regulation 4–4–4, 3 Code Colo. Reg. 702–4.

Exemption statutes in general have been afforded a liberal construction so as to achieve their purposes. *In re Elliott*, 74 Wash.2d 600, 446 P.2d 347 (1968); *Northern Savings & Loan Ass'n v. Kneisley*, 193 Wash. 372, 76 P.2d 297 (1938); *see also Holden v. Stratton*, 198 U.S. 202, 25 S.Ct. 656, 49 L.Ed. 1018 (1905); 5 G. Couch, *Couch on Insurance* § 29:118, 425 (2d ed.1984).

Our primary task in construing a statute is to ascertain and give effect to the intent of the General Assembly. *See People v. Zapotocky*, 869 P.2d 1234 (Colo.1994). In order to discern legislative intent, we look first to the language of the statute itself. *See Farmers Insurance Exchange v. Bill Boom, Inc.*, 961 P.2d 465 (Colo.1998).

It is a cardinal rule of statutory construction that words are to be construed according to their common usage and that a term which has acquired a technical or particular meaning, whether by legislative definition or otherwise, should be construed according to its acquired meaning. *See* § 2–4–101, C.R.S. 1998; *see also* 2A N. Singer, *Sutherland Statutory Construction* § 47.31 (5th ed.1991).

The statute uses two terms, "cash surrender value" and "cash value," the former to define the measure of the exemption and the latter to define the measure of the exclusion from the exemption.

When, as here, the General Assembly uses different terms, it is presumed that they have different meanings; that is, "cash surrender value" and "cash value" are not synonymous terms. *See* § 2–4–101, C.R.S.1998;

2A N. Singer, *Sutherland Statutory Construction* § 46.06 (5th ed.1991) (the use of different terms within related statutes plainly implies that differing meanings were intended); *see also Owen v. Going*, 13 Colo. 290, 22 P. 768 (1889) (recognizing that some meaning shall be given to every word used).

The General Assembly has generally defined the term "cash surrender value" in the Standard Nonforfeiture and Valuation Act at § 10–7–303(1)(a), C.R.S.1998, as follows:

> Except as provided in paragraphs (b) and (c) of this subsection (1), any cash surrender value available under the policy in the event of default in a premium payment due on any policy anniversary, whether or not required by section 10–7–302, shall be an amount not less than the excess, if any, of the present value, on such anniversary, of the future guaranteed benefits which would have been provided for by the policy, including any existing paid-up additions, if there had been no default, over the sum of: (I) The then present value of the adjusted premiums, as defined in sections 10–7–305 and 10–7–305.1, corresponding to premiums which would have fallen due on and after such anniversary; and (II) The amount of any indebtedness to the company on the policy.

The Office of the Insurance Commissioner has not promulgated any general definitions of the terms. It has, however, defined the terms in a regulation governing the obligations of agents and insurers when customers are being solicited to replace existing life insurance contracts.

The definitions, which are written in an informal, nontechnical, and advisory manner addressed to consumers, state:

> Cash Surrender Value: This is the amount of money you can get if you surrender your life insurance policy or annuity. If there is a policy loan, the cash surrender value is the difference between the cash value printed in the policy and the loan value. Not all policies have cash surrender value.

> . . . .

> Borrow Policy Loan Values: If your life insurance policy has a cash surrender value, you can almost always borrow all or part of it from the insurer. Interest will be charged according to the terms of the policy, and if the loan with unpaid interest ever exceeds the cash surrender value, the policy will be terminated. If you die, the amount of the loan and any unpaid interest due will be subtracted from the death benefits.

Department of Insurance Regulation 4–4–4, 3 Code Colo. Reg. 702–4 at 68.

The policy at issue here defines the terms in pertinent part as follows:

> 5.1 Cash Value. The cash value for this policy, when all premiums due have been paid, will be the sum of: the cash value from the Table of Guaranteed Values; the cash value of any paid-up additions; and the amount of any dividend accumulations.

> . . . .

> 5.4 Cash Surrender. The Owner may surrender this policy for its cash surrender value. The cash surrender value is the cash value less any policy debt.

Based on the foregoing, and without fashioning our own precise definition for each, we conclude that, while the terms are frequently used interchangeably, "cash value" and "cash surrender value" have separate and distinct meanings.

■ "Cash value" is a value of the insurance contract determined in accordance with the terms of that contract which must be computed or determined in a manner conforming with statutes and regulations. "Cash value" increases incrementally with the payment of each premium, and does not vary with the amount of any outstanding loans.

■ "Cash surrender value" is the cash value less, among perhaps other things, the amount of any outstanding loans and accrued but unpaid interest. "Cash surrender value," therefore, varies with the balance of outstanding loans against the policy.

■ Here, it was undisputed that, in August of 1996, the policies insuring husband had cash values of $18,158.16, with outstanding loans of $15,715.74, leaving a cash surrender value of $2,442.42. By late July 1997, the loans had been paid in full and the cash value and cash surrender values were $19,673.73. By November 1997, when the garnishment was served, husband had again borrowed against the policies in the amount of $15,-364.95, leaving a cash surrender value of $5,174.17.

The trial court determined that these transactions, coupled presumably with premiums paid in the interim, increased the cash surrender value of the policies insuring husband's life by $2,731.75. The court subtracted the cash surrender value in August 1996 from that of November 1997, and held that amount was not exempt from garnishment pursuant to § 13–54–102(1)(*l*)(I)(A).

The increase in cash surrender value between the two dates, as determined by the trial court, appears to be principally related to a decrease in the balance of the outstanding loans, not from the payment of premiums, though no allocation was made by the trial court.

■ In our view, the exemption statute exempts from garnishment the "cash surrender value" of a life insurance policy up to $25,000. The exclusion from the exemption, which is measured by the incremental increases in "cash value" occasioned by the making of contributions to the policy, *i.e.,* payment of premiums, during the preceding twenty-four months, is the only garnishable or attachable asset. The amount of the garnishable cash surrender value has not been ascertained in this case, and thus, a remand for that determination is required.

### III.

■ Husband next contends that the trial court erred in failing to determine that all ten policies were exempt based upon equitable grounds. We disagree.

■ Although exemptions from garnishment are not strictly limited to those provided by statute, *see, e.g., Hall v. Hall–Stradley,* 776 P.2d 1166 (Colo.App.1989), husband has

failed to present any justifiable basis for equitable relief in this case.

■ Husband relies solely on language from *In re Marriage of Gray,* 813 P.2d 819 (Colo.App.1991) in which the court stated that property awarded to one spouse may not be used to pay maintenance to the other spouse. However, that principle applies only in the context of a trial court's initial award of maintenance and limits the source of payment to which the court may look at the time of awarding maintenance in determining the ability of a spouse to pay maintenance. It has never been used to limit the property to which a party may look for payment of properly awarded maintenance after default, and we decline to use it in such a way here.

Consequently, we agree with the trial court that equitable intervention was not appropriate in this case.

Because this is husband's sole contention on appeal relating to the eight policies insuring his daughters, the portion of the trial court's order determining that these policies were not exempt is affirmed.

### IV.

■ We also disagree with husband's contention that the trial court's findings were insufficient.

■ A trial court's findings must be sufficiently explicit to give an appellate court a clear understanding of the basis of its decision. *Mission Viejo Co. v. Willows Water District,* 818 P.2d 254 (Colo.1991); *see* C.R.C.P. 52.

Here, the trial court's three-page order sets forth in detail the party's respective positions, relevant legal authorities, findings, and conclusions. Because we are able to ascertain the basis for the trial court's decision, we conclude that the order was sufficiently detailed. *See In re Marriage of Dickman,* 670 P.2d 20 (Colo.App.1983).

Finally, we find that husband's appeal is not frivolous. Consequently, we deny wife's

request for costs and attorney fees incurred on appeal. *See Wood Bros. Homes, Inc. v. Howard,* 862 P.2d 925 (Colo.1993); C.A.R. 38(d).

The portion of the trial court's order determining that the policies were not exempt on equitable grounds is affirmed. The remainder of the order is reversed, and the cause is remanded for further proceedings in accordance with this opinion.

JUDGE MARQUEZ and JUSTICE ERICKSON* concur.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.1998