**In re Marlene M. MOOSMAN, Debtor.**

**Robertson B. Cohen, Chapter 7 Trustee, Plaintiff,**

v.

**Prudential Insurance Company of America and Marlene M. Moosman, Defendants.**

**Bankruptcy No. 10–32206 ABC.**
**Adversary No. 11–1481 ABC.**

United States Bankruptcy Court, D. Colorado.

July 5, 2012.

Kevin S. Neiman, Denver, CO, for Plaintiff.

Edgar M. Whiting, Cuyler Burk, P.C., Parsippany, NJ, Alan L. Bugg, Colorado Springs, CO, for Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT MARLENE M. MOOSMAN'S MOTION FOR SUMMARY JUDGMENT

A. BRUCE CAMPBELL, Bankruptcy Judge.

This matter is before the Court on the cross Motions for Summary Judgment filed by Plaintiff Robertson B. Cohen, Chapter 7 Trustee ("Trustee") and the Debtor/Defendant Marlene M. Moosman ("Debtor"). The Court, having reviewed the Motions, the Responses, and the file in this matter, and being otherwise advised in the premises, finds as follows.

### Background

This case requires the Court to interpret C.R.S. § 13–54–102($l$)(I)(A), Colorado's exemption for the "cash surrender value" of life insurance policies. The issue central to the parties' motions for summary judgment is the statute's exclusion from the exemption of increases in "cash value" of a life insurance policy during the 48 months prior to bankruptcy. In the this case, the cash value of the Debtor's life insurance policy increased in the 48 months prior to her bankruptcy because of her premium payments. During this 48 month period however, Debtor cashed out some paid-up additions (PUA's) to her coverage which resulted from dividends. She also took loans out against the policy. The parties disagree as to the application of the exemption statute under these circumstances.

In this adversary proceeding, the Trustee sued the Debtor's insurance company, Prudential Insurance Company of America ("Prudential"), for turnover of the cash surrender value of the Debtor's life insurance policy. Debtor intervened, claiming that the cash surrender value was exempt. After the Trustee stipulated that the default entered against Prudential could be vacated, Prudential answered, stating that it is only a "stakeholder" with respect to the competing claims of the Trustee and the Debtor. Prudential requested the Court to "author[ize] the appropriate disposition of any non-exempt value of the policy." Debtor and Trustee filed cross-motions for summary judgment, and Prudential filed a response agreeing that there are no material facts in dispute and stating that "it will abide by the Court's determination concerning the turnover of all or any part of the value of the policy."

### Undisputed Facts

The material undisputed facts are as follows:

Debtor filed a Chapter 7 case on August 31, 2010. [Case No. 10–32206, Docket # 1]. She listed a Prudential "whole life policy" on her Schedule B of personal property with a value of $6,250.00. [*Id.*] On her Schedule C, Debtor claimed the policy as exempt, under C.R.S. § 13–54–102($l$)(I)(A), in the amount of $6,250.00. [*Id.*].

On November 3, 2010, the Trustee objected to the exemption of the life insurance policy, also citing CRS § 13–54–102($l$)(I)(A). [Case No. 10–32206 ABC, Docket # 16]. The Trustee alleged that the "guaranteed cash value" of the policy increased from $4,395 to $6,250.20 in the 48 months prior to bankruptcy. The Trustee alleged that "the four (4) year cash value increase was $1855 and that amount is non-exempt." [*Id.*].

The Debtor did not respond to the Trustee's objection to her exemption, and on May 4, 2011, the Court entered an order

sustaining the objection [Case No. 10–32206 ABC, Docket # 25], stating that "[t]he Debtor's exemption on Prudential life insurance policy is DENIED." [*Id.*].[1]

The Trustee then sued Prudential in this adversary proceeding for turnover of "the nonexempt increases in cash value from moneys contributed to the Policy during the 48 months prior to **the** Petition Date." [Complaint, ¶ 13]. Debtor sought to intervene in the adversary proceeding, stating that she did not respond to the Trustee's objection to her claim of exemption essentially because she did not dispute that increases in cash value during the 4 years prior to bankruptcy were non-exempt, but asserting that there was in fact no increase in the cash value on her policy during this period. [Adv. Pro. 11–1481 ABC, Docket # 15].

According to interrogatory responses and documents produced by Prudential, the following table compares the value of Debtor's life insurance policy at the relevant times:

|  | 8/31/06 | 8/31/10 (petition. date) | 48 month change +/- |
| --- | --- | --- | --- |
| Tabular Cash Value[2] | $4,617.00 | $6,495.75 | $1,878.75(+) |
| Termination Dividend | $ 235.80 | $ 361.50 | 125.70(+) |
| Cash Value PUA's | $2,988.43 | $ 758.46 | $2,229.97( - ) |
| Total Cash Surrender Value | $7,841.23 | $7,615.71 | $ 225.52( - ) |
| Less: Outstanding Loans | $ 0 | $6,155.92 | $6,155.92(+) |
| Net Cash Surrender Value | $7,841.23 | $1,459.79 | $6,381.44( - ) |

[Exhibits E and F to Trustee's Motion for Summary Judgment].

According to Debtor's policy, "Tabular Cash Value" is the value of the policy "if all due premiums have been **paid,** there is no contract debt, and there are no dividend credits." [Exhibit A to Trustee's Motion for Summary Judgment, page 9]. Prudential's Supplemental Response to the **Trustee's** Interrogatories clarifies that "the increase in **tabular** cash **value is** the result of premium payments and dividends do not factor into increases in the tabular cash value." [Exhibit D to Trustee's Motion for Summary Judgment]. A "Termination Dividend" is an additional dividend amount paid upon either the death of the insured or the surrender of the policy. [Exhibit H to Trustee's Motion for Summary Judgment, ¶ 6]. "Cash Value PUA's" are cash value "paid-up additions" which reflect credits for annual dividends on the

**1.** In the Trustee's objection to Debtor's claim of exemption, the Trustee clearly asserted that there was an increase of $1,855 in the cash value of Debtor's policy during the 48 months prior to Debtor's bankruptcy, and that Debtor was entitled to no exemption for the cash surrender value of the policy. Debtor's default and the Court's order sustaining the Trustee's objection to Debtor's exemption are the law of the case. The preclusion doctrines of *res judicata* and/or collateral estoppel are additional grounds entitling the Trustee to summary judgment in this case. For reasons not apparent, however, the Trustee has not chosen to raise these arguments in his Motion for Summary Judgment.

**2.** "Tabular Cash Value" and all the other terms in the left-hand column of this table are the terms used by Prudential, in its contract with Debtor and in its discovery responses, to describe the various components of value in the Debtor's life insurance policy.

anniversary of the policy which are treated as **paid-up life** insurance additions on an insured's life. [Exhibit H to Trustee's Motion for Summary Judgment, ¶ 8, Exhibit A to Trustee's Motion for Summary Judgment, page 7]. Tabular Cash Value, Termination Dividend, and Cash Value PUA's are added to get the "Total Cash Surrender Value" of the policy. [Exhibits E and F to Trustee's Motion for Summary Judgment]. Amounts due on loans are subtracted from "Total Cash Surrender Value" to obtain the "Net Cash Surrender Value." [*Id.* Exhibit H to Trustee's Motion for Summary Judgment, ¶ 24].

In October, 2008 and in December, 2008, Debtor received checks totaling $4,000 from Prudential **for the** "cash value of paid-up additional insurance surrendered." **[Exhibits I and J to** Trustee's Motion for Summary Judgment].

### Arguments of the Parties

The Trustee argues that the exemption statute, and Colorado case law interpreting it, *In re Gedgaudas,* 978 P.2d 677 (Colo. App.1999) (*"Gedgaudas"*), provide that there is an exclusion from the exemption of the cash surrender value of life insurance which is measured by the increase in cash value occasioned by contributions (i.e. premium payments) made by the Debtor during the 48 month period prior to bankruptcy. He asserts that, according to the policy definitions and Prudential's discovery responses, the number that reflects the effect of Debtor's contributions through premium payments is the policy's "Tabular Cash Value." The Trustee argues that it is undisputed that this "Tabular Cash Value" of Debtor's policy increased by $1,878.75 during the 48 months prior to Debtor's bankruptcy, therefore this amount of the policy's "Net Cash Surrender Value" is non-exempt pursuant to the statute. Since the "Net Cash Surrender Value" of the policy on the petition date was less than $1,878.75, the Trustee argues that the entire "Net Cash Surrender Value" of $1,459.79 is non-exempt.

The Debtor argues that the "Net Cash Surrender Value" of her policy decreased from $7,841.23 during the 48 months prior to bankruptcy to $1,459.79 on the date of bankruptcy. Thus, there is no non-exempt increase in value for the Trustee to recover. The Debtor does not address the *Gedgaudas* case, nor does she otherwise deal with the statute's use of "cash value" versus "cash surrender value."

### Summary Judgment Standards

Federal Rule of Civil Procedure 56(c), which is made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides that summary judgment should be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In this case, the parties agree that the material facts stated above are undisputed, and that this adversary proceeding is appropriately resolved on summary judgment.

### Discussion

**C.R.S.** § 13–54–102(*l* )(I)(A) provides an exemption for

> The *cash surrender value* of policies or certificates of life insurance to the extent of one hundred thousand dollars for writs of attachment or writs of execution issued against the insured; except that there is no exemption for increases in *cash value* from moneys contributed to a policy or certificate of life insurance during the forty-eight months prior to the issuance of the writ of attachment or writ of execution.

(emphasis added).

The only reported case dealing specifically with the cash value exclusion from

the life insurance exemption is *Gedgaudas.* There, the Colorado Court of Appeals addressed the different terminology used by the legislature to define the extent of the exemption ("cash surrender value") and the extent of the exclusion from the exemption ("cash value"). The court noted that when the legislature "uses different terms, it is presumed that they have different meanings; that is, 'cash surrender value' and 'cash value' are not synonymous terms." *Id.* at 680. The court "without fashioning [its] own precise definition of each," said that " '[c]ash value' is a value of the insurance contract determined in accordance with the terms of that contract … [that] increases incrementally with the payment of each premium and does not vary with the amount of any outstanding loans," and that " '[c]ash surrender value' is the cash value less, among perhaps other things, the amount of any outstanding loans and accrued but unpaid interest." [3] *Id.* at 681.

The trial court in *Gedgaudas* had determined that the amount of cash subject to garnishment was computed by looking at cash surrender value. Under the facts of that case, in August 1996, the cash value of the debtor's life insurance was $18,158.16 with loans of $15,715.74, leaving a cash surrender value of $2,442.42. In November 1997, when the garnishment was served, the cash value was $20,539.12 and loans were $15,364.95, leaving a cash surrender value of $5,174.17. The trial court ruled that the difference between $5,174.17

and $2,442.42, or $2,731.75, was the non-exempt amount. *Id.* at 682.[4]

The Court of Appeals reversed, holding that the trial court incorrectly determined the amount subject to garnishment, noting that, "The exclusion from the exemption, which is measured by the incremental increases in 'cash value' occasioned by the making of contributions to the policy, *i.e.,* payment of premiums, during the preceding twenty-four months, is the only garnishable or attachable asset." *Id.* The Court concluded that, "The amount of the garnishable cash surrender value has not been ascertained in this case." *Id.*

■ This Court agrees with the reasoning and holding of the *Gedgaudas* case. That is, that the language of C.R.S. § 13–54–102(*l*)(I)(A) prescribes different measures for the exemption and the exclusion from the exemption. It is incorrect to measure the exclusion from the exemption by changes in cash surrender value. Debtor's argument that she is entitled to summary judgment because the "Net Cash Surrender Value" of her policy declined in the 48 months prior to her bankruptcy is contrary to the language of the statute and to the holding in *Gedgaudas.*

**The exemption** statute excludes from the exemption increases in "cash value" from "moneys contributed to a policy" during the 48 month period prior to bankruptcy. In this case the undisputed facts show that moneys contributed directly by Debtor, through premium payments, increased

---

3. The Court of Appeals' definition of "cash surrender value" in *Gedgaudas* corresponds to Prudential's term "Net Cash Surrender Value." "Cash value," as defined in *Gedgaudas*—that is, the value of a life insurance policy that increases incrementally with the payment of each premium and does not vary with the amount of outstanding loans—most closely corresponds with Prudential's term "Tabular Cash Value.' "

4. It is not clear why the trial court in *Gedgaudas* used a 15 month period, from August 1996 to November 1997, to compare the cash surrender values of the debtor's policy. The statute in effect at that time excluded from the exemption any increase in cash value during the 24 months prior to execution or attachment. The statute was amended in 2002 to increase the exclusion period to 48 months.

the "Tabular Cash Value" of her policy by $1,878.75 during the relevant time period.[5] However, the Debtor **obtained $4,000** through cashing out her accumulated PUA's during this same period. Because she cashed out slightly more than was added to the "Total Cash Surrender Value" of the policy during the four year period, the "Total Cash Surrender Value" of the policy on the petition date was slightly less than the "Total Cash Surrender Value" four years before.[6]

The statute's exclusion for money contributed to a life insurance policy during the 48 months prior to bankruptcy reflects a balancing of the purpose of the exemption, "to encourage individuals to insure their lives for the benefit of their families," *Gedgaudas,* 978 P.2d at 680, against a policy of preventing abusive pre-bankruptcy planning through converting non-exempt cash into exempt cash surrender value. The concern over the conversion of non-exempt to exempt property is especially justified in the case of life insurance because it is relatively easy to "reconvert" the exempt cash surrender value to cash after a bankruptcy is **filed.**

The exclusion from the exemption clearly focuses only on "increases in value" occasioned by contributions to a policy during the 48 month period. Thus, the statute preserves the right of individuals to insure their lives for the benefit of their families while preventing individuals from creating what is, in essence, an exempt savings account, by contributing cash to their life insurance policies during the four year period prior to bankruptcy or the exercise of judgment collection remedies. Had the legislature also wanted to consider withdrawals of cash value when determining the exclusion from the exemption, it could easily have so provided, or it could have used a term such as "net" cash value when defining the exclusion from the exemption. It did not. In *Gedgaudas,* the debtor effectively withdrew the cash value increases in his policies by borrowing against them. The Colorado Court of Appeals held that this decrease in the cash available to the debtor upon his surrender of the policy did not effect the computation of the "increase in cash value" for purposes of the exclusion from the exemption. Given the explicit language of the statute and the Colorado Court of Appeals' construction of the statute in *Gedgaudas,* the Court believes it is also inappropriate, absent an amendment to the statute, to consider a direct withdrawal of cash when computing the exclusion amount. Accordingly, if on the date of bankruptcy a debtor's life insurance policy has a cash surrender value equal to or less than the amount her contributions during the prior four years have increased the cash value of the policy, the entire cash surrender value is non-exempt.

Based on the undisputed facts set forth above, the cash value of Debtor's policy increased $1,878.75 from Debtor's own contributions (through premium payments) to the policy.[7] It is also undisputed

---

5. There was an additional increase of $1,770.03 in "Cash Value PUA's" during the 48 month period. This increase resulted from dividends on Debtor's policy. The $1,770.03 figure is derived by taking the August, 2006 "Cash Value PUA's" of $2,988.43, less $4,000 received by the Debtor in 2008 from the "Cash Value PUA's," and determining that a $1,770.03 increase in "Cash Value PUA's" was necessary in order to end up with

$758.46 "Cash Value PUA's" on the petition date.

6. The four year decline in "Total Cash Surrender Value" was $225.52.

7. It is also undisputed that the amount of cash available to Debtor from her life insurance policy increased another $1,770.03 from dividend PUA's during the four year period

that the cash surrender value of the policy on the petition date was $1,459.79, an amount less than the cash value increase. Accordingly, the entire cash surrender value of Debtor's Prudential life insurance policy is non-exempt.

Based on the foregoing it is

ORDERED that the Trustee's Motion for Summary Judgment is granted; and it is

FURTHER ORDERED that Debtor's Motion for Summary Judgment is denied; and it is

FURTHER ORDERED that judgment will be enter in favor of the Trustee and against the Debtor and Prudential, declaring the entire cash surrender value of Debtor's life insurance policy on the date of the bankruptcy is non-exempt, and ordering Prudential to turn over the sum of $1,459.79 to the Trustee within 14 days from the date of this Order.

prior to Debtor's bankruptcy. See footnote 5, *supra*. The Court need not decide whether dividend additions are "increases in cash value from moneys contributed to a policy," so as to be within the exclusion of C.R.S. § 13–

54–102(*l*)(I)(A), because in this case the four year increase in cash value attributable to Debtor's premium payments alone exceeds the cash surrender value of her policy on the date of bankruptcy.